# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONAL GENE HULL,<br><br>          Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No. 1:17-cv-01003-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

This matter is before the Court on Plaintiff's Complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). The parties have consented to entry of a final judgment by the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 9, 10).

The court, having reviewed the record, the administrative transcript, the briefs of the parties, and the applicable law, and having heard oral argument from the parties on October 30, 2018, finds as follows:

Plaintiff challenges the decision of the Administrative Law Judge ("ALJ") on the ground that the ALJ improperly rejected Plaintiff's testimony regarding his symptoms and level of limitation. (ECF No. 19 at 4).

The relevant part of the ALJ's decision is as follows:

    In this case, the claimant's allegations are not fully credible. For

1

> example, he alleged his ability to complete tasks is "affected" (see Exhibit B8E, p. 5), but that is inconsistent with his subsequent report that he finishes what he starts (see Exhibit B8E, p. 5). The claimant further alleged his ability to bend is "affected" (see Exhibit B8E, p. 5), but Dr. Wagner's report that he was easily able to bend at the waist to take off his shoes and put them back on (see Exhibit B3F, p. 5) does not support this. He also alleged his ability to concentrate is "affected" (see Exhibit B8E, p. 5), but that is inconsistent with mental status examination findings showing adequate concentration, persistence, and pace (see Exhibit B12F, p. 4). These inconsistent and unsupported statements significantly detract from the credibility of his allegations.
>
> The claimant further alleged suffering from significant mental and physical limitations (see Exhibits B5E-B6E; B8E; B10E; hearing testimony), but that is inconsistent with his daily activities, which includes driving, shopping, walking to the store, and helping his mother with her exercises (Exhibit B3F, p. 4). In addition to being inconsistent with the claimant's alleged limitations, this range of activity is also inconsistent with the overall allegation he is unable to work. Furthermore, he alleged passing out without use of his oxygen, but no clinical data, treatment notes or other objective evidence supports this allegation. These additional inconsistent and unsupported statements coupled with a wide range of daily activity further detract from the credibility of his allegations, namely the allegation he is unable to work.

(A.R. 26).

At oral argument, the parties discussed at length whether any error in the ALJ's credibility decision was harmless. The ALJ incorporated many limitations when adopting the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform a range of work at the light exertional level as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and walk about four hours and sit about six hours in an eight-hour workday. He can frequently kneel, crouch, crawl, balance, and stoop and must avoid even moderate exposure to respiratory irritants, such as fumes, odors, dusts, gases, cigarette smoke, and poor ventilation.

(A.R. 24). The issue is whether the ALJ should have included an additional limitation regarding the use of oxygen after walking, and whether a fair incorporation of any such limitation as explained by Plaintiff would have changed the vocational expert's assessment of the availability of jobs.

Plaintiff provided the following relevant testimony regarding his limitations and lack thereof:

> Q: Okay. How often do you walk your dogs at the park?

2

|   |   |   |
|---|---|---|
| 1 |  | A:   It's a 30-minute roundtrip because I don't stop at the park. I just try to keep going. |

(A.R. 45).

```
Q:    Well, how far or how long can you walk?
A:    About 30 minutes.
Q:    Okay.
A:    Yeah. Like I said, I walk to the park and back, come back and put my oxygen on for about 30 minutes and I'm good to go. . . .
```

(A.R. 55).

```
Q:    How often do you, or do you experience shortness of breath?
A:    Only when I've walked a ways or have done something strenuous, yes.
```

(A.R. 56).

```
Q:    Do you have any difficulties with standing?
A:    No. No.
Q:    What about sitting?
A:    No.
```

(A.R. 57)

```
Q:    When you went on that trip to Morro Bay what were you doing specifically that caused you to use the oxygen that time?
A:    Walking from the van to the beach and then messing around on the beach a little bit, just on the beach and then back to the van. And then I didn't use it the rest of the trip home, no. There I didn't use it, but there at Morro Bay I did because of the walking distance, you know.
      . . .
Q:    Okay. Were you walking fast or briskly?
A:    Keeping up with others can make you more briskly, yeah, to keep up with the others, yeah.
Q:    Were you on a walking trail or literally like on the, walking on the sand of the beach?
A:    On the beach with the fellows, yeah.
Q:    That can be strenuous. They have boot camp that purposely go walking on the beach because it's so strenuous.
A:    Yeah. Especially on the, not on the bar. The bar is real hard, but the sand, that's real hard to walk in.
Q:    Okay.
A:    Yeah.
Q:    But when you take the dogs to the park, the 30-minute round trip do you usually go back home and use oxygen?
A:    Oh, yeah. I look forward to it.
```

(A.R. 63-64).

```
Q:    You've testified that if you are exerting yourself or walking that you need to use oxygen after about 30 minutes of doing that.
A:    Yes.
Q:    Okay. So if you were not having to exert and just sitting down would you have to use oxygen at all?
A:    No.
      . . .
```

3

> Q: Okay, and what's of most importance is if you had a job where you were sitting down and not having to walk and do a lot of exertion, could you do that job?
> A: Yeah. I feel that I can do something sitting down.

(A.R. 61-62).

In light of this testimony, Plaintiff argues that the RFC should have incorporated an additional requirement to use oxygen for at least 10 minutes after every instance of walking at least 30 minutes. The Commissioner argues, in response, that the vocational expert already provided testimony that establishes that there are jobs in the economy even with the further limitation, i.e. not requiring significant walking. The Commissioner relies on the following testimony given by the vocational examiner at the hearing:

> Q: Within an eight-hour workday this person can lift and carry up to 20 pounds occasionally, up to 10 pounds frequently, stand and walk fast four hours within an eight-hour workday, sit about six hours. This person can frequently kneel, crouch, crawl, balance, stoop, they must avoid even moderate exposure to respiratory irritants such as fumes, odors, gases, cigarette smoke, poor ventilation. Is there any past work that this person can perform?
> A: No, Your Honor.
> Q: Can the hypothetical individual perform any other work?
> A: A reduced range of light. Do you want me to cite examples?
> Q: Sure.
> A: Okay. At light work a cashier position or positions would be available . . . . 211.462.010. Applying a 90 degree, 90% erosion because basically the hypothetical is sit/stand would leave us with 117,000 in the national economy post-erosion. A second example would be counter clerk, DOT 249.366-010, light, SVP 2. And also applying that same 90% erosion would leave us at with 11,600 post erosion. Under the information clerk classification I had DOT 237.367-018, light, SVP 2, approximately 9,000 post 90% erosion.
> . . .
> Q: Hypothetical #2, assume the same residual functional capacity described in hypothetical #1, but in addition to that this person must be allowed the option of using a portable oxygen tank during normal work breaks. Is there any past work that this person can perform?
> A: During normal work breaks?
> Q: Yes.
> A: Right. I don't think there would be any preclusion by an employer to let them use a portable thing like that on their own personal time and break, so I don't, that wouldn't impact it.
> Q: Okay. Hypothetical#3, assume the same residual functional capacity described in hypothetical #2, but in addition to that this person can perform work tasks that do not involve fast-paced production work or fast-paced, brisk walking. There's no past work, correct?
> A: Correct.
> Q: Is there any other work that this person can perform?

4

> A: Neither of the three jobs previously cited would be classified as fast-paced production of fast walking required, so there is no change.

(A.R. 67-69). In other words, there are sufficient jobs for an individual with the RFC provided by the ALJ, including cashier, counter clerk, and information clerk, which are "basically . . . sit/stand" and "so not involve faced paced production work or fast-paced, brisk walking" and also allow the use of oxygen during normal work breaks.

The Court finds that a fair reading of Plaintiff's testimony, even crediting the limitations regarding the use of oxygen, would qualify him for work under such a hypothetical. Plaintiff has no limitations on sitting and standing. He only requires oxygen when he has "walked a ways or have done something strenuous" akin to a 30 minute walk with his dogs or walking briskly on the beach. The available jobs of cashier, counter clerk, and information clerk do not require such type of exertion. Moreover, he could use oxygen on normal breaks as needed.

Because any error was harmless, the Court will not address the sufficiency of the ALJ's credibility determination.

For the foregoing reasons, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **October 31, 2018**     /s/ Eric P. Groj
                                UNITED STATES MAGISTRATE JUDGE